2016 JUL 25 P. 12: 39



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73045-2-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AZEB WELDETENSAY ABAY, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: July 25, 2016 |
| | ) | |

VERELLEN, C.J. — Azeb Abay appeals her felony hit and run conviction. She claims insufficient evidence supports her conviction. When viewed in a light most favorable to the State, there is ample evidence Abay failed to stop and return to the scene. Abay also argues the statutory provision to stop "as close thereto as possible" is unconstitutionally vague. But as applied to these facts, the statute provides an adequate standard to protect against arbitrary enforcement.

Therefore, we affirm.

## FACTS

On a sunny afternoon in March 2014, Azeb Abay drove her sports utility vehicle into a pedestrian walking in a crosswalk as Abay turned right onto Bothell Way. The pedestrian had an orange safety vest on and was carrying a video camera to record traffic for a traffic congestion study. Abay paused for a moment as witnesses yelled at her to stop, but then slowly drove towards the next intersection.

A King County Sheriff's Office deputy happened upon the scene almost immediately and found the pedestrian lying unconscious on the payment. The pedestrian appeared to be convulsing. Witnesses pointed out Abay's vehicle, which was already a block away, headed west on Bothell Way. The deputy told the witnesses to wait for aid as he pursued Abay with his patrol car's lights and siren activated.

The deputy caught up to Abay about three blocks away from the accident, but Abay did not pull over, bypassing two driveways. Both were driving slowly due to heavy traffic. The deputy then drove next to Abay and gestured to her to pull over. Abay gestured back as though she was pulling over, but continued driving. She appeared to be using her cell phone. Abay bypassed the entrance to a strip mall, turned right at the next intersection—the equivalent of five blocks from the accident— and finally stopped in a drugstore driveway.

The deputy identified 11 driveways Abay could have turned into between where the accident occurred and where she ultimately stopped, including an auto parts store, bank, gas station, two restaurants, and a supermarket parking lot. The lane between Abay's driving lane and the driveways was a bus lane that also operated as a right turn lane. Although traffic was heavy, this lane remained empty during the deputy's pursuit.

The State charged Abay with felony hit and run. At trial, Abay testified that she knew she hit the pedestrian but "was shocked."[1] She had been licensed to drive for five months and said she was "not in a good condition and I just wanted to calm

---

[1] Report of Proceedings (Dec. 2, 2014) at 148.

myself."[2] She left the scene because she saw the police had arrived and knew the pedestrian would be cared for and "was looking for a safe place to pull over."[3] Although she commuted that route daily, Abay stated she was unaware of the driveways she passed.

A jury convicted Abay as charged. The trial court imposed a first time offender waiver with credit for three days in custody and an additional 80 hours of community service.

Abay appeals.

## ANALYSIS

Abay challenges the sufficiency of the evidence supporting her felony hit and run conviction. A challenge to the sufficiency of the evidence admits the truth of the State's evidence.[4] All reasonable inferences from the evidence are viewed in favor of the State and interpreted most strongly against the defendant.[5] We must determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt.[6]

The elements of felony hit and run require proof that (1) the defendant drove the vehicle; (2) the defendant's vehicle was involved in an accident that resulted in death or injury to a person or damage to an unattended vehicle; (3) the defendant knew she had been in an accident; and (4) the defendant failed to stop and return to

---

[2] Id. at 150.

[3] Id. at 162.

[4] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

[5] Id.

[6] State v. Ware, 111 Wn. App. 738, 741, 46 P.3d 280 (2002).

the scene in order to provide her name, address, insurance policy, vehicle license, and driver's license and render reasonable assistance to any person injured in the accident.[7]

Here, sufficient evidence supported all the elements of felony hit and run. It was undisputed that Abay hit the pedestrian in the marked crosswalk. She admitted to the jury she knew immediately that she had hit him. It was also undisputed that the pedestrian was injured. Abay paused for a moment and then drove off. She admitted she did not call 911. Abay made no efforts to impart her identity or driving information to anyone. She passed 11 accessible driveways before finally stopping for the deputy pursuing her with his lights and siren activated and gesturing to her to pull over.

Nonetheless, Abay contends her conviction must be reversed because her arrest "made it impossible" for her to voluntarily return to the scene to provide her information and render any aid.[8]

Abay primarily relies on State v. Eaton.[9] Police arrested Eaton for driving under the influence of alcohol and escorted him to jail.[10] Jail staff searched Eaton and discovered methamphetamine hidden in his sock.[11] The State charged Eaton with possession of a controlled substance and sought a sentence enhancement for

---

[7] RCW 46.52.020(1), (3); State v. Sutherland, 104 Wn. App. 122, 130, 15 P.3d 1051 (2001).

[8] Appellant's Br. at 10.

[9] 168 Wn.2d 476, 229 P.3d 704 (2010).

[10] Id. at 479-80.

[11] Id. at 479.

possessing the substance in jail.[12] Our Supreme Court held that the sentencing enhancement "requires that a defendant took some voluntary act to be placed within the enhanced zone in order to subject the defendant to an enhanced sentence."[13] "The act may be as simple as choosing to put one foot in front of the other to enter the zone, but it must be a choice freely made."[14] Because Eaton was "forcibly transported by police to the area giving rise to additional punishment, he did not have the requisite ability to choose."[15]

Eaton does not help Abay because the criminal conduct here was not caused by an outside force. Abay's choice to pause after the accident and then drive the equivalent of 5 blocks and past 11 accessible driveways was "a choice freely made."[16]

Viewed in a light most favorable to the State, sufficient evidence supports Abay's conviction.

Abay also argues that the trial court instructed the jury on alternative means of committing hit and run without including a unanimity instruction and that because the State presented insufficient evidence to prove three of the four alleged alternative means, her constitutional right to a unanimous verdict was violated. But hit and run is

---

[12] Id. at 479-80.

[13] Id. at 487.

[14] Id. at 488.

[15] Id. at 486.

[16] Abay cites State v. W.R., Jr. for the proposition that "when a defense necessarily negates an element of the crime, it violates due process to place the burden of proof on the defendant." 181 Wn.2d 757, 765, 336 P.3d 1134 (2014). But lack of volition does not negate any element of hit and run here.

a single means crime and therefore, no unanimity instruction was necessary.

An "alternative means" crime "is one where the criminal conduct can be proved in multiple ways."[17] "Such crimes generally are identified by stating a single crime, followed by a statement of more than one means by which the crime can be committed."[18]

Whether a statute provides an alternative means for committing a particular crime is left to judicial determination.[19] "[T]he statutory analysis focuses on whether each alleged alternative describes '*distinct acts* that amount to the same crime.'"[20] "The more varied the criminal conduct, the more likely the statute describes alternative means. But when the statute describes minor nuances inhering in the same act, the more likely the various 'alternatives' are merely facets of the same criminal conduct."[21]

For example, in State v. Peterson, our Supreme Court applied this analysis to the failure to register as a sex offender statute, former RCW 9A.44.130 (2003).[22] Peterson argued the failure to register statute was an alternative means crime

---

[17] State v. Makekau, 2016 WL 3188944, at *2 (Wash. Ct. App. June 7, 2016).

[18] Id.

[19] State v. Peterson, 168 Wn.2d 763, 769, 230 P.3d 588 (2010).

[20] State v. Sandholm, 184 Wn.2d 726, 734, 364 P.3d 87 (2015) (quoting id. at 770).

[21] Id.; see State v. Butler, 2016 WL 3264406, at *2 (Wash. Ct. App. June 14, 2016) (holding the four verbs describing identity theft in the statute "are not distinct means by which to commit identify theft, but rather are multiple facets of a single means"); see also Makekau, 2016 WL 3188944, at *1 (Wash. Ct. App. June 7, 2016) (holding "the terms 'receive, retain, possess, conceal, or dispose of' are definitional and do not create alternative means of the crime of possession of a stolen vehicle, which involves a single means—possessing a stolen vehicle.").

[22] 168 Wn.2d 763, 230 P.3d 588 (2010).

because the crime could be committed by failing to register as a sex offender after (1) becoming homeless, (2) moving between residences in one county, or (3) moving between counties.[23] Our Supreme Court concluded the statute did not create an alternative means crime because an individual's conduct in each of the three scenarios does not vary significantly.[24] The statute prohibited the single act of moving without providing the proper notice.[25]

The purpose of Washington's hit and run statute is to promote immediate assistance to injured persons and to facilitate accident investigations, including preventing drivers from avoiding liability for their acts by leaving the scene without providing the required information.[26] As in Peterson, the relevant portion of the hit and run statute contemplates a single act—the failure to fulfill a driver's statutory obligation to remain, help, and cooperate when involved in an accident. Abay attempts to argue that failing to stop and failing to return and remain at the scene are distinct alternative means of committing hit and run, but they are both facets of the single obligation under the statute. And the responsibilities of providing identity and insurance information and giving aid, while somewhat different, are both part of providing assistance and facilitating accident investigations. They are not so distinct as to rise to an alternative means requiring jury unanimity.

---

[23] Id. at 769-70.

[24] Id. at 770.

[25] Id.

[26] State v. Vela, 100 Wn.2d 636, 640, 673 P.2d 185 (1983); State v. Silva, 106 Wn. App. 586, 593, 24 P.3d 477 (2001).

7

Even if we were convinced that the statute establishes distinct alternative means, there is ample evidence Abay failed to meet each "alternative means" because Abay drove away from every one of her responsibilities under the statute.

Abay also argues the phrase "as close thereto as possible" found in RCW 46.52.020 is unconstitutionally vague because it fails to provide ascertainable standards to protect against arbitrary enforcement.[27] The relevant provision of the statute provides that the driver of a vehicle involved in an accident resulting in the injury to or death of any person must "immediately stop such vehicle at the scene of such accident *or as close thereto as possible* but shall then forthwith return to, and in every event remain at, the scene of such accident."[28]

We review the constitutionality of a statute de novo.[29] The statute is presumed constitutional, and the party challenging it bears the heavy burden of proving its unconstitutionality beyond a reasonable doubt.[30] "When considering a vagueness challenge, we do not consider the statutory provision in isolation; rather, we must evaluate the provision in its broader statutory context."[31] "The vagueness doctrine protects procedural due process by ensuring laws provide notice and clear standards to prevent arbitrary enforcement. The purpose of this doctrine is to 'provide fair notice to citizens as to what conduct is proscribed and to protect against

---

[27] Appellant's Br. at 16.

[28] RCW 46.52.020(1) (emphasis added).

[29] State v. Watson, 160 Wn.2d 1, 5, 154 P.3d 909 (2007).

[30] In the Matter of the Det. of M.W. & W.D., 2016 WL 3249495, at *11 (Wash. June 9, 2016); State v. Coria, 120 Wn.2d 156, 163, 839 P.2d 890 (1992).

[31] Det. of M.W. & W.D., 2016 WL 3249495, at*11; City of Seattle v. Huff, 111 Wn.2d 923, 929, 767 P.2d 572 (1989).

arbitrary enforcement of the laws.'"[32] Because Abay does not claim that the hit and run statute violates her First Amendment rights, her vagueness challenge will be evaluated only as applied to her case.[33]

Abay fails to satisfy her burden of proving that the statute is unconstitutional. First, City of Spokane v. Carlson already rejected a vagueness challenge to the specific phrase "as close thereto as possible" in Spokane's hit and run ordinance, which mirrored the State statute.[34] There, the driver was involved in an accident but did not stop for several blocks out of fear he would block traffic.[35] The court reviewed the entire ordinance and found "[e]ven a cursory review of [the ordinance] shows a clear road map for its violation."[36] The court concluded the "ordinance defines the criminal offense with sufficient certainty to avoid arbitrary enforcement."[37]

Second, Abay's challenge focuses on a series of "what-ifs"—"What if Ms. Abay had calmed down sooner and pulled over into an earlier driveway?" What if she had pulled over just as she did, but then started to walk back quickly to the scene?"[38] But the statute is tested for unconstitutional vagueness by inspecting the actual conduct

---

[32] Det. of M.W. & W.D., 2016 WL 3249495, at*11 (internal citation omitted) (quoting City of Seattle v. Eze, 111 Wn.2d 22, 26, 759 P.2d 366 (1988)).

[33] City of Spokane v. Douglass, 115 Wn.2d 171, 181-82, 795 P.2d 693 (1990).

[34] 96 Wn. App. 279, 283-84, 979 P.2d 880 (1999).

[35] Id. at 282.

[36] Id. at 284 (footnote omitted).

[37] Id.

[38] Appellant's Br. at 18.

of the party who challenges it, not by examining hypothetical situations at the periphery of the statute's scope.[39]

As in Carlson, the statute here provides an adequate standard to govern its enforcement. Therefore, we affirm.

WE CONCUR:

---

[39] Douglass, 115 Wn.2d at 182-83.