[No. 47735-8-I. Division One. January 7, 2002.]

THE STATE OF WASHINGTON, *Respondent*, v. DONALD LEROY SEEK, *Appellant*.

---

*Harlan R. Dorfman*; and *David B. Koch* (of *Nielsen, Broman & Associates, P.L.L.C.*), for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Kathryn Y. Kim, Deputy*, for respondent.

BAKER, J. — Donald Leroy Seek was charged and convicted of one count of bigamy under RCW 9A.64.010. The

court interpreted RCW 9A.64.010 as a strict liability crime with no wrongful intent element. At trial, Seek objected to the court's "to-convict" instruction that outlined the elements the State was required to prove beyond a reasonable doubt. Seek also objected to the court's instruction placing the burden on him to prove by a preponderance of the evidence that he had a reasonable belief that he was eligible to marry. Seek argues that the statute must be read to include wrongful intent as the mens rea element of bigamy. We agree, and reverse.

## I

■ Seek married Teresa Martini in 1990. They lived together for approximately six years before separating. At some point, Seek formed a relationship with Brenda Strong. Later Seek was tried and sentenced for crimes unrelated to this matter.[1]

While Seek was incarcerated, he and Strong made arrangements to marry. With the help of Strong, Seek attempted to divorce Martini. In July, Seek signed a petition for dissolution and Strong arranged for Martini's signature. Seek signed a marriage license application indicating he was divorced. Martini then signed the petition for dissolution. By the time these documents were signed, Seek had been separated from Martini for more than three years.

About a month and a half after the petition for dissolution was filed, Seek was notified that he needed to file a motion to proceed in forma pauperis before his petition for dissolution could be filed. He signed that motion on August 12, 1999, just two days before his marriage to Strong. The motion was granted and the petition was filed on Septem-

---

[1] The State's brief points to Seek's unrelated crimes by way of an unpublished opinion. The general rule is that unpublished opinions may be cited for evidence of facts established in earlier proceedings in the same case involving the same parties. *In re Pers. Restraint of Davis*, 95 Wn. App. 917, 920 n.2, 977 P.2d 630 (1999), *aff'd*, 142 Wn.2d 165, 12 P.3d 603 (2000). They can also be cited to establish facts in a different case that are relevant to the current case. *Davis*, 95 Wn. App. at 920 n.2. Here, neither of these purposes is met. Accordingly, we strike from the State's Brief note 1 at page 2, the first sentence of the second paragraph on page 2, and the Appendix.

ber 10, 1999. On April 13, 2000, a decree of dissolution for the marriage of Seek and Martini was entered in King County Superior Court.

For some reason, Martini grew suspicious of the timing of Seek's marriage. She eventually contacted a police detective, who discovered Seek's marriage to Martini had not been dissolved prior to his marriage to Strong. Seek was subsequently charged with one count of bigamy.

At trial, Seek proposed jury instructions placing on the State the burden to prove beyond a reasonable doubt that at the time of his marriage to Strong, he did not reasonably believe he was legally eligible to marry. The trial court rejected the proposed instructions, ruling that a defendant's belief concerning marital status constitutes an affirmative defense, and it was Seek's burden to prove the defense by a preponderance of the evidence. The jury found Seek guilty, and Seek appeals.

## II

The question of whether an actual intent to violate the law is an element in the crime of bigamy is one that has occupied the attention of the courts to a considerable degree. It has arisen principally when the defense to a bigamy charge is an honest but mistaken belief on the defendant's part that the former marriage had been terminated.[2] Traditionally, the position taken by the courts in the United States is that intent is immaterial because bigamy is a statutory crime, and unless the Legislature has introduced into it the element of intent, the courts have no right to do so.[3] Intent has been held to be immaterial based on public policy concerns that various unfortunate complications might well arise from the protection of two separate

---

[2] 11 Am. Jur. 2d *Bigamy* § 13, at 325 (2d ed. 1997).

[3] *See, e.g., Russell v. State,* 66 Ark. 185, 49 S.W. 821, 822 (1899); *People v. Spoor,* 235 Ill. 230, 85 N.E. 207, 208 (1908); *Cornett v. Commonwealth,* 134 Ky. 613, 121 S.W. 424, 426 (1909); *Commonwealth v. Hayden,* 163 Mass. 453, 40 N.E. 846, 848 (1895); *State v. Zichfeld,* 23 Nev. 304, 46 P. 802, 805-06 (1896); *State v. Ackerly,* 79 Vt. 69, 64 A. 450, 451 (1906).

marriages involving the same person.[4] And it is also sometimes stated that whatever one voluntarily does, he or she of course intends to do, and that if the statute has made it criminal to do any act under certain circumstances, the person voluntarily doing that act is chargeable with a criminal intent of doing it.[5]

Nevertheless, the view that intent is immaterial in a bigamy prosecution is not universally accepted. At least one court has expressed the view that wrongful intent is an element of the crime of bigamy.[6] And the courts of some jurisdictions, at least under some circumstances, have implicitly recognized the relevance of criminal intent by holding that the accused's subsequent marriage under a mistaken belief in the termination of his or her prior marriage established a defense to a charge of bigamy.[7]

In Washington, the original Remington Code version of the bigamy statute did not identify any defense to that crime. As defined then, bigamy was a status or strict liability crime:

Every person who, having a husband or wife living, shall marry another person, or continue to cohabit with such second husband or wife in this state, shall be guilty of bigamy . . . .[8]

When the Legislature enacted a new criminal code in 1975, it effected material changes in the bigamy statute by adding the word "intentionally" to the definition of the crime of bigamy, and providing for "reasonable belief" defenses.

RCW 9A.64.010 now reads:

---

[4] *Geisselman v. Geisselman*, 134 Md. 453, 107 A. 185, 186 (1919).

[5] *Long v. State*, 192 Ind. 524, 137 N.E. 49, 50 (1922).

[6] *People v. Gaul-Alexander*, 32 Cal. App. 4th 735, 38 Cal. Rptr. 2d 176, 183 (1995) (recognizing that intent was an element even where the statute did not refer to intent in the definition).

[7] *People v. Vogel*, 46 Cal. 2d 798, 802, 299 P.2d 850, 853-54 (1956); *Robinson v. State*, 6 Ga. App. 696, 65 S.E. 792, 796 (1909).

[8] REM. REV. STAT. § 2453 (1932).

(1) A person is guilty of bigamy if he intentionally marries or purports to marry another person when either person has a living spouse.

(2) In any prosecution under this section, it is a defense that at the time of the subsequent marriage or purported marriage:

(a) The actor reasonably believed that the prior spouse was dead; or

(b) A court had entered a judgment purporting to terminate or annul any prior disqualifying marriage and the actor did not know that such judgment was invalid; or

(c) The actor reasonably believed that he was legally eligible to marry.

(3) The limitation imposed by RCW 9A.04.080 on commencing a prosecution for bigamy does not begin to run until the death of the prior or subsequent spouse of the actor or until a court enters a judgment terminating or annulling the prior or subsequent marriage.

(4) Bigamy is a class C felony.

Seek argues that the word "intentionally" in section one of the statute means that an individual must intend to marry another person knowing that one of the parties is already married. The State counters that the word "intentionally" modifies only the words "marries or purports to marry." Because the statute can reasonably be interpreted either way, with completely different results, it is ambiguous on its face. Under RCW 9A.64.010(2)(c), it is a defense that one reasonably believed that he was legally eligible to marry. The court below concluded that this defense was an affirmative defense and that the defendant was required to prove it by a preponderance of the evidence. But if wrongful intent is an element of the crime, then the defense under RCW 9A.64.010(2)(c) negates the wrongful intent element and the State would have the burden to disprove it beyond a reasonable doubt whenever a defendant adequately raises the defense.

In interpreting a statute, every word, clause, and sentence should be given effect, if possible.[9] Statutes should

---

[9] *Klein v. Pyrodyne Corp.*, 117 Wn.2d 1, 13, 810 P.2d 917, 817 P.2d 1359 (1991).

be construed so that all the language used is given effect, and no part is rendered meaningless or superfluous.[10] Statutes must be given a reasonable construction to avoid absurd results.[11] Courts must look at material changes in legislation as indicative of legislative intent.[12] Additionally, ambiguous statutes should be interpreted in a way that provides lenity to defendants.[13]

The State argues that "intentionally" modifies only the words "marries or purports to marry," the legislative purpose being to protect an incompetent or inebriated person from an unintentional marriage in possible violation of the bigamy statute. But marriage is a contract, depending upon its formation by the objective manifestation of intent by competent parties. Moreover, a marriage in this state can be effected only after a three-day wait following application for a license. We doubt that the Legislature was concerned over the highly unlikely scenario of an unintentional marriage when it used the word "intentionally" in the statute.

Further, reading the statute as the trial court interpreted it could lead to absurd results. Under the trial court's reading of the statute, an unwitting second spouse could be charged with bigamy and forced to defend him or herself. Again, we doubt that the Legislature intended such a possibility.[14]

Finally, under the rule of lenity, any ambiguity in the meaning of a criminal statute must be resolved in favor of the defendant.[15] As mentioned above, RCW 9A.64.010 is ambiguous. The ambiguity must therefore be resolved in

---

[10] *State v. Bash*, 130 Wn.2d 594, 602, 925 P.2d 978 (1996).

[11] *State v. Cann*, 92 Wn.2d 193, 195, 595 P.2d 912 (1979).

[12] *Davis v. Dep't of Licensing*, 137 Wn.2d 957, 967, 977 P.2d 554 (1999).

[13] *State v. Bourne*, 90 Wn. App. 963, 969, 954 P.2d 366 (1998) (rule of lenity requires an ambiguous statute to be interpreted most favorably to the defendant).

[14] *See* RCW 9A.04.020(1)(b).

[15] *In re Pers. Restraint of Hopkins*, 137 Wn.2d 897, 901, 976 P.2d 616 (1999).

favor of the defendant. Accordingly, we conclude that RCW 9A.64.010 contains a wrongful intent element.[16]

 The State must prove every essential element of a crime beyond a reasonable doubt.[17] "It is reversible error to instruct the jury in a manner that would relieve the State of this burden."[18] Consequently, a "to-convict" instruction that does not contain all the elements results in automatic reversible error.[19] Additionally, where a statutorily provided defense negates an element of the crime charged, the Fourteenth Amendment prohibits assigning the burden of proof regarding that defense to the defendant.[20]

Here, the court below gave an instruction set forth in 11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 46.02.[21] The instruction failed to instruct the jury on the wrongful intent element. Thus, the instruction relieved the State of its

---

[16] In addition to the rules of statutory construction used above, *State v. Bash* identified eight relevant factors as aids in determining whether the Legislature has created a strict liability crime. *Bash*, 130 Wn.2d at 605-06. Because we have determined the Legislature's intent that RCW 9A.64.010 contains a wrongful intent element using statutory construction we need not address the *Bash* test. However, we do note that the most compelling factor against finding a strict liability offense under *Bash* is the fact that "entirely innocent conduct may fall within the net cast by the statute in question." *State v. Anderson*, 141 Wn.2d 357, 366, 5 P.3d 1247 (2000). Under the trial court's reading of the statute, innocent conduct might very well fall within this net. Moreover, bigamy is classified as a class C felony. This offense carries with it a maximum term of five year's imprisonment. RCW 9A.20.021. This factor clearly weighs in favor of concluding that bigamy is not a strict liability offense.

[17] *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State v. Acosta*, 101 Wn.2d 612, 615, 683 P.2d 1069 (1984); *State v. McCullum*, 98 Wn.2d 484, 493-94, 656 P.2d 1064 (1983); *State v. Green*, 94 Wn.2d 216, 224, 616 P.2d 628 (1980).

[18] *State v. Byrd*, 125 Wn.2d 707, 714, 887 P.2d 396 (1995).

[19] *State v. Smith*, 131 Wn.2d 258, 262-65, 930 P.2d 917 (1997).

[20] *McCullum*, 98 Wn.2d at 496.

[21] The court instructed the jury that:

To convict the defendant of the crime of bigamy, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about August 14, 1999, the defendant intentionally married or purported to marry Brenda Strong;

(2) That the defendant at the time of the marriage or purported marriage had a living spouse by the name of Teresa Seek; and

(3) That the acts occurred in the State of Washington . . . .

burden to prove all of the elements of the crime beyond a reasonable doubt. Accordingly, we conclude that the trial court's error requires reversal.

Reversed and remanded.

KENNEDY and COX, JJ., concur.