[No. 40152-5-II.   Division Two.   August 16, 2011.]

DAVID H. REGAN, *Appellant*, v. MELISSA MCLACHLAN ET AL., *Defendants*, PIERCE COUNTY, *Respondent*.

*Melissa McLachlan*, pro se.

*Rexall Hawkins*, pro se.

*Brett A. Purtzer*, for appellant.

*Mark E. Lindquist, Prosecuting Attorney*, and *Donna Y. Masumoto, Deputy*, for respondents.

¶1 VAN DEREN, J. — David H. Regan appeals the trial court's order granting Pierce County's motion to dismiss his claims against Pierce County for negligence and breach of fiduciary duty when the Pierce County Superior Court clerk remitted forfeited bail to Metro City Bail Bonds under a superior court order. Regan argues that the trial court erred by (1) adopting the facts from our unpublished opinion, *State v. Cruz*, noted at 146 Wn. App. 1006, 2008 WL

2811270, 2008 Wash. App. LEXIS 1753; (2) determining that the Pierce County court clerk's actions were protected by quasi-judicial immunity; and (3) finding that collateral estoppel barred Regan's claims against Pierce County. Although we hold that collateral estoppel did not bar Regan's claims against Pierce County, we affirm because the clerk's office's actions here were based solely on its compliance with a valid court order directing it to pay the money to Metro City. This order provided the clerk's office with quasi-judicial immunity and prevented Regan's suit.

## FACTS

¶2 We previously addressed the facts of this case in *Cruz*, where we held that the superior court, sitting in the criminal matter, had no jurisdiction to order Melissa McLachlan to redeposit the remitted bail bond money for Javier Quiroz Cruz into the court registry. 2008 WL 2811270 at *1, 2008 Wash. App. LEXIS 1753, at *1. Those facts are useful as background information[1] for Regan's present appeal:

> McLachlan was a member of Metro City, . . . which was authorized to conduct business on behalf of Fairmont Specialty Insurance Company (Fairmont). . . . Hawkins[, McLachlan's husband,] was also affiliated with Metro City.
>
> Metro City issued a bail bond for $50,000.00 to secure the appearance of Javier Quiroz Cruz. On July 24, 2006, the trial court forfeited Cruz's bail. . . . [O]n August 11, 2006, Fairmont issued a check to the Pierce County court clerk for $50,000.00, drawn from the account of its affiliate, Fire Insurance Co. In an

---

[1] Although GR 14.1 prohibits citing unpublished opinions as authority and, under RCW 2.06.040, they lack precedential value, here we do not cite our previous unpublished opinion for precedential authority. Thus, we do not thwart these rules and objectives. *See, e.g., Ranger Ins. Co. v. Pierce County*, 138 Wn. App. 757, 761 n.1, 158 P.3d 1231 (2007), *aff'd*, 164 Wn.2d 545, 192 P.3d 886 (2008); *State v. Seek*, 109 Wn. App. 876, 878 n.1, 37 P.3d 339 (2002) (stating that unpublished opinions "can also be cited to establish facts in a different case that are relevant to the current case"). Moreover, both parties rely on the facts from our unpublished *Cruz* opinion in their briefs.

accompanying letter to the clerk's office, Fairmont requested that "any refunds or remissions" be returned to Fire Insurance Co. This request was also handwritten on the check.

Meanwhile, Metro City returned Cruz to custody and, on August 25, 2006, the forfeited bail, minus costs and post-judgment interest, was remitted to the issuer of the bond and Fairmont's agent—Metro City. The trial court record on appeal does not include evidence that Metro City was dissolved in 2006, but both Fairmont and McLachlan refer to this fact.

*Cruz*, 2008 WL 2811270 at *1, 2008 Wash. App. LEXIS 1753, at *2-3 (citation omitted).

¶3 On April 30, 2007, Fairmont and Fire Insurance Co. filed a motion in the *Cruz* criminal case asking the trial court to order Pierce County and/or McLachlan d/b/a Metro City to pay $49,250.00 to Fire Insurance Co. and to order McLachlan d/b/a Metro City to deposit the funds with the Pierce County court clerk. 2008 WL 2811270 at *1, 2008 Wash. App. LEXIS 1753, at *3. The *Cruz* trial court ordered McLachlan d/b/a Metro City to remit the money to the Pierce County court clerk. 2008 WL 2811270 at *2, 2008 Wash. App. LEXIS 1753, at *6.

¶4 McLachlan appealed the trial court's order and we vacated it. *Cruz*, 2008 WL 2811270 at *4, 2008 Wash. App. LEXIS 1753, at *11-12. We stated that

it is undisputed that the remittance order complied with RCW 10.19.140 and properly listed Metro City as the issuer of the bail bond. And the record shows that until January 16, 2007, Fairmont and Fire Insurance Co. made no attempt to revoke Metro City's authority to conduct business on their behalf in the State of Washington.

*Cruz*, 2008 WL 2811270 at *4, 2008 Wash. App. LEXIS 1753, at *11. We held that, "[b]ecause there was no issue of improper forfeiture or remittance before it, the superior court erred in hearing Fairmont's motion." *Cruz*, 2008 WL 2811270 at *4, 2008 Wash. App. LEXIS 1753, at *11. We also noted that "[w]hether Fairmont and Fire Insurance Co.

otherwise have a claim against the clerk, Metro City, or McLachlan is not before us." *Cruz*, 2008 WL 2811270 at *4, 2008 Wash. App. LEXIS 1753, at *11.

¶5 On July 6, 2009, Regan[2] filed a complaint against (1) McLachlan and Hawkins, husband and wife, and their marital community, (2) Metro City, (3) Pierce County, and (4) Clark County.[3] Regan alleged that Pierce County was negligent and breached its fiduciary duty by remitting the forfeited bail to Metro City. Regan also claimed breach of contract, breach of agreement, conversion, fraud, and negligent supervision against the other defendants.[4] In reply to Pierce County's CR 12(b)(6) dismissal motion, Regan asserted that the clerk's office's conduct was ministerial and that it was, thus, not entitled to quasi-judicial immunity but he did not assert a claim for ministerial misfeasance in handling Fairmont's and Fire Insurance Co.'s money. Regan also moved for "Summary Judgment/Dismissal." Clerk's Papers (CP) at 308. Pierce County filed a reply brief in support of its CR 12(b)(6) motion to dismiss and moved to strike Regan's opposition to Pierce County's dismissal motion and his summary judgment motion "for failure to comply with the applicable court rules." CP at 310.

¶6 At the motion hearing, the trial court (1) struck some exhibits from Regan's opposition brief, (2) did not hear Regan's summary judgment motion because it did not comply with court rules and (3) granted Pierce County's dismissal motion.[5] The trial court entered findings, stating:

---

[2] Regan states that he "is an agent for Fairmont" and that Fairmont "assigned its rights to [Regan] to recover monies" in this action. Clerk's Papers at 5-6. No party disputes Regan's statement.

[3] On January 6, 2010, the trial court ordered Clark County dismissed from the lawsuit based on the parties' joint stipulation.

[4] Because this is an appeal of the order dismissing Pierce County, we address only Regan's claims against Pierce County.

[5] Also at this hearing, although not relevant to this appeal, the trial court denied Regan's default judgment motion against McLachlan, Hawkins, and Metro City.

1. As its factual findings, this court adopts and incorporates, as if fully set forth herein, those facts stated in the unpublished opinion of the Court of Appeals in . . . *Cruz*, 146 Wn. App. 1006 . . . .

2. Defendant Pierce County and its Officers enjoyed quasi-judicial immunity as the actions alleged by Plaintiff were performed pursuant to lawfully executed court orders.

3. The doctrine of collateral estoppel bars Plaintiff from asserting claims against Defendant Pierce County and its officers for returning the $50,000 bond at issue in the *Cruz* case to Metro City . . . , pursuant to court order.

4. It would be unjust to delay entry of judgment as to Defendant Pierce County under CR 54[ ](b) because (a) this court entered a final order on December 4, 2009 dismissing all Plaintiff's causes of action against Defendant Pierce County[,] (b) the dismissal of Pierce County will not adversely affect the remaining defendants, and (c) continuance of this action against the remaining defendants will not adversely affect Pierce County.

CP at 337-38. Regan appeals.

## ANALYSIS

I. CR 12(b)(6) MOTION TO DISMISS STANDARD OF REVIEW

¶7  We review de novo the propriety of a trial court's CR 12(b)(6) dismissal of a cause of action. *San Juan County v. No New Gas Tax*, 160 Wn.2d 141, 164, 157 P.3d 831 (2007). To prevail, the moving party in a CR 12(b)(6) motion bears the burden to establish "beyond doubt that the claimant can prove no set of facts, consistent with the complaint," that would justify recovery. *No New Gas Tax*, 160 Wn.2d at 164. "Such motions should be granted 'sparingly and with care,' and only in the unusual case in which the plaintiff's allegations show on the face of the complaint an insuperable bar to relief." *No New Gas Tax*, 160 Wn.2d at 164 (quoting *Tenore v. AT&T Wireless Servs.*, 136 Wn.2d 322, 330, 962 P.2d 104 (1998)). In reviewing a motion to dismiss under CR 12(b)(6), we accept the allegations in the

complaint as true. *Reid v. Pierce County*, 136 Wn.2d 195, 201, 961 P.2d 333 (1998).

## II. TRIAL COURT'S RELIANCE ON THE *CRUZ* FACTS

■ ¶8 First, Regan contends that the trial court improperly adopted the facts from *Cruz* "because the legal issues were different." Br. of Appellant at 9. We do not address Regan's argument because he does not provide citation to legal authority explaining why the trial court could not rely on the facts of an unpublished opinion that also involved the Pierce County clerk's office's remittance of Cruz's forfeited bail to Metro City. We will not address issues raised without proper citation to legal authority. RAP 10.3(a)(6). Moreover, Regan does not contest any of the facts from *Cruz* and extensively cites to the unpublished opinion to support his brief's factual statement.

## III. DISMISSAL OF REGAN'S CLAIMS AGAINST PIERCE COUNTY

¶9 Next, Regan argues that the trial court erred in granting Pierce County's dismissal motion because the Pierce County court clerk does not enjoy quasi-judicial immunity and collateral estoppel does not apply to bar his claims against the Pierce County. We hold that the court clerk here had quasi-judicial immunity in following the trial court's order to disburse the money but that the subsequent trial court erred in accepting Pierce County's argument that collateral estoppel barred Regan's claim based on *Cruz*.

### A. Judicial Immunity

■ ■ ¶10 Under the judicial immunity doctrine, judges are absolutely immune from civil damage suits for acts performed within their judicial capacity. *Taggart v. State*, 118 Wn.2d 195, 203, 822 P.2d 243 (1992). The purpose of judicial immunity is to ensure that judges can administer justice without fear of personal consequences. *Taggart*, 118 Wn.2d at 203; *Adkins v. Clark County*, 105 Wn.2d 675, 677, 717 P.2d 275 (1986).

¶11 Quasi-judicial immunity " 'attaches to persons or entities who perform functions that are so comparable to those performed by judges that it is felt they should share the judge's absolute immunity while carrying out those functions.' " *West v. Osborne*, 108 Wn. App. 764, 772-73, 34 P.3d 816 (2001) (emphasis omitted) (quoting *Lutheran Day Care v. Snohomish County*, 119 Wn.2d 91, 99, 829 P.2d 746 (1992)). To determine if immunity applies, we look to the function being performed rather than to the person who performed it. *Lallas v. Skagit County*, 167 Wn.2d 861, 865, 225 P.3d 910 (2009).

¶12 Quasi-judicial immunity protects a court clerk from liability when the clerk is acting as an "arm of the court" and performing court-ordered functions. *Reddy v. Karr*, 102 Wn. App. 742, 749, 9 P.3d 927 (2000); *see also Babcock v. State*, 116 Wn.2d 596, 809 P.2d 143 (1991); 15A Am. Jur. 2d *Clerks of Court* § 31 (2000). Conversely, the court clerk is not protected from liability when performing ministerial functions because a ministerial act is not a judicial act. *Mauro v. County of Kittitas*, 26 Wn. App. 538, 540, 613 P.2d 195 (1980). For example, in *Mauro*, 26 Wn. App. at 541, the Kittitas County court clerk failed to record a court order withdrawing a defendant's arrest warrant. Division Three of this court held that the clerk's act was ministerial and, thus, Kittitas County would be liable for the "ministerial nonfeasance" of its employee. *Mauro*, 26 Wn. App. at 541.

¶13 But here, the court clerk is immune from liability for actions processing the remittance according to the trial court's order. The trial court ordered the $50,000 bail bond, minus costs and interest, returned to the bond issuer, Metro City. The order specifically stated that the bond balance "shall be remitted by the clerk to METRO CITY." CP at 263. Following the trial court's order, the Pierce County court clerk remitted $49,250 to Metro City. In returning the funds to Metro City, the court clerk was following a court order and, thus, acting as an "arm of the court." *See* 15A Am. Jur. 2d *Clerks of Court* § 31. We affirm

the trial court's order granting Pierce County's dismissal motion because the court clerk had quasi-judicial immunity when remitting funds following the court's order.[6]

B. Collateral Estoppel

¶14 Although our holding that the clerk's office had quasi-judicial immunity allows us to affirm the trial court's dismissal of Regan's claim against Pierce County, we also address Regan's claim that the trial court erred in finding that collateral estoppel barred his claim against Pierce County due to the obvious disagreement about the effect of our opinion in *Cruz*.

¶15 Regan argues that the trial court erred in finding that collateral estoppel barred his suit against Pierce County. Pierce County states that collateral estoppel applies because "the dispositive issues presented with respect to Defendant Pierce County are the same." Br. of Resp't (Pierce County) at 15. At oral argument, Pierce County clarified that its collateral estoppel argument applied only

---

[6] Regan argues for the first time on appeal that "the Pierce County clerk committed ministerial nonfeasance when it failed to document the clear instructions [to remit any refunds to Fire Insurance Co.] on the face of the check." Br. of Appellant at 14. Regan further claims that "had the clerk properly noted this instruction upon processing the check—in a manner consistent with its ministerial duties—it would have been unable to process the court order and would have informed the court of the issue." Br. of Appellant at 14. But Regan did not argue that the court clerk improperly processed the check at the trial court. In his response to Pierce County's dismissal motion, Regan only stated:

> The Court clerk's duties are clerical in nature. The clerk is therefore not immune from liability. The duties are strictly ministerial in nature, and the clerk is not the Court, nor a judicial officer. [*Swanson v. Olympic Peninsula Motor Coach Co.*,] 190[ ] Wash. 35, 38, 66 P.2d 842 (1937). The clerk is strictly a county employee, and therefore the County is a proper defendant in this action.

CP at 361. We generally will not review a claimed error the appellant did not raise before unless it falls under an enumerated exception. RAP 2.5(a). Regan did not argue that the court clerk improperly processed the check in his complaint or in response to Pierce County's dismissal motion or at the hearing on the dismissal motion. Moreover, Regan has not argued on appeal that a RAP 2.5(a) exception applies. We decline to review the claimed error. Also, reviewing courts will not address issues raised in passing or unsupported by authority or persuasive argument. RAP 10.3(a)(5); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

to the trial court's ruling that the order in *Cruz* was valid and enforceable. We agree with Regan and hold that the trial court erred in finding that collateral estoppel barred all of his claims against Pierce County.

¶16 The collateral estoppel, or issue preclusion, doctrine precludes relitigation of the same issue in a subsequent action between the same parties. *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 306, 96 P.3d 957 (2004). The purpose of collateral estoppel is to promote judicial economy by avoiding relitigation of the same issue, afford the parties the assurance of finality of judicial determinations, and to prevent harassment of and inconvenience to litigants. *Christensen*, 152 Wn.2d at 306-07. "[T]he party against whom the doctrine is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding." *Christensen*, 152 Wn.2d at 307.

¶17 In order to prevail on a collateral estoppel claim, the party seeking the doctrine's application bears the burden of showing that

> (1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding; (2) the earlier proceeding ended in a judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the earlier proceeding; and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied.

*Christensen*, 152 Wn.2d at 307.

> [A]pplication of collateral estoppel is limited to situations where the issue presented in the second proceeding is identical in all respects to an issue decided in the prior proceeding, and "where the controlling facts and applicable legal rules remain unchanged." Further, issue preclusion is appropriate only if the issue raised in the second case "involves substantially the same bundle of legal principles that contributed to the rendering of the first judgment," even if the facts and the issue are identical.

*LeMond v. Dep't of Licensing*, 143 Wn. App. 797, 805, 180 P.3d 829 (2008) (internal quotation marks omitted) (quoting

*Standlee v. Smith*, 83 Wn.2d 405, 408, 518 P.2d 721 (1974)). Here, the trial court held that "[t]he doctrine of collateral estoppel bar[red] [Regan] from asserting claims against Defendant Pierce County and its officers for returning the $50,000 bond at issue in the *Cruz* case to Metro City . . . pursuant to court order." CP at 338.

¶18 But *Cruz* was a criminal case between the State and Cruz. The issue on appeal in *Cruz* was whether the trial court had jurisdiction in the criminal matter to order Metro City to redeposit the remitted bail bond money into the court registry. We determined that the *Cruz* trial court did not have jurisdiction to require "Metro City to remit funds to the clerk of the court in the criminal case involving the State and Cruz" and we reversed the trial court's order. 2008 WL 2811270 at *4, 2008 Wash. App. LEXIS 1753, at *11-12. Furthermore, in doing so, we stated, "Whether Fairmont and Fire Insurance Co. otherwise have a claim against the clerk, Metro City, or McLachlan is not before us." *Cruz*, 2008 WL 2811270 at *4, 2008 Wash. App. LEXIS 1753, at *11.

¶19 Here, after our decision in *Cruz*, Regan sued Pierce County, alleging negligence and breach of its fiduciary duty. In *Cruz*, neither the trial court nor we decided whether Fairmont had a civil cause of action against Pierce County for its actions in remitting the funds to Metro City. Regan, Fairmont, and Pierce County were not parties to the *Cruz* criminal case.

¶20 Pierce County has not met its burden of establishing the four required collateral estoppel elements. Specifically, Pierce County has not demonstrated either (1) identical issues in the two proceedings or (2) that Regan (or Fairmont) was a party to the earlier criminal proceeding. *See Christensen*, 152 Wn.2d at 307. We hold that collateral estoppel did not bar Regan's claims against Pierce County because the issues in this civil matter are not identical to those in the *Cruz* criminal matter and the parties involved are not the same.

¶21 Nevertheless, we affirm the trial court's grant of Pierce County's dismissal motion because, in the absence of a ministerial misfeasance claim against the clerk's office, the clerk's actions to implement the trial court's order to remit the funds to Metro City were entitled to quasi-judicial immunity.

ARMSTRONG and JOHANSON, JJ., concur.